Tucker, P.
The questions presented for decision in this case are numerous and important. The appellants rely upon the presumptions arising from length of time, as having an important influence, not only on the general question of the appellee’s right to rip up this ancient transaction, but on several particular items of the appellee’s demand. They call in question also the rights of Mrs. Pasteur to the legacy of £ 500. They loudly complain of the manner in which the accounts have been adjusted by the commissioner in the court below. And they urge besides, many minor objections.
The death of Dr, Pasteur having occurred in 1791, and of his wife in the year following, and the accounts of his executor having been settled by commissioners of the hustings court of Williamsburg, in 1810, it is conceived by the appellant, that they should be protected by the lapse of time from a further investigation of the subject. No one feels more strongly than I, the salutary influence upon the peace and repose of society, of the principle which forbids us to encourage stale claims, or to unravel long settled accounts. Nor is there any among all the subjects of controversy ari *354 sing in courts of justice, to which this principle should be more liberally applied, than to that of executors’ accounts. No man’s estate would be safe, if no lapse of time could be permitted to close the door forever against inquiry. No man cou^ die *n Peace! wh° had ever been an executor, if he knew that when he should be gone, and the memory of transactions lost, his representatives would be called to a new and rigorous scrutiny of matters buried in oblivion. No man would be executor under such circumstances; and thus, one of the charities of life, the preservation and administration of dead men’s estates, would be committed altogether to careless officers of the law, instead of being discharged with fidelity and zeal, by some friend of the deceased. ' Courts, therefore, have wisely discountenanced these antiquated claims, and even where the length of time does not operate to shut them out altogether, throws the burden of proof upon those who are thus disturbing the ashes of the dead. Nor is the presumption of which I speak, confined in its operation, I apprehend, to the exclusion of any inquiry as to the truth and fairness of the items charged in a settled account. The frame and structure and principles of that account, ought also to be considered as exempted from criticism, after a great lapse of time, and this for the preservation of the repose of society. Doubtless, there are many accounts settled in the last century, upon principles now reprobated by the courts: but who would disturb what has been so long at rest, for the purpose of subjecting it to modern improvements in the adjustment of executors’ accounts ? This remark very peculiarly applies to objections to an ancient account, on the ground that the executor has not been charged with interest. For, as that charge depends (as we ar.e told in Granberry v. Granberry) upon the circumstances of each case, it cannot fairly be a subject of examination, when those circumstances may be presumed to be buried in oblivion. I should, therefore, unhesitatingly, repel an attempt to unravel and new mo'del a very old account, because that interest had not *355 been charged to the executor. But, in all these cases, the lapse of time must be considerable, to justify the court in closing the door upon all inquiry. In the present case, the account was settled in 1810. There was then no administration of Mrs. Pasteur, although the distributee entitled to her estate, was alive. That distributee died in 1816; too short a time to give rise to the presumption. The bill was fded by her administrator in 1818, there being no representative of Mrs. Pasteur until 1822, when the bill demanding a full settlement of these accounts was filed by the appellee in that character. I do not think he is barred by the length of time, from an examination of the accounts, and from objecting to their frame and structure, or to the omission to charge the executor with interest.
Neither can the presumption of payment of the legacy in this case arise. The length of time is sufficient, indeed, if it stood alone. But this presumption, like every other, may be repelled ; and it is successfully repelled as to Mrs. Pasteur herself, by the fact that it was not payable till after her death ; and as to all others, by the facts, that there was no one to receive, that the executor kept up the funds for the payment of debts, and that he has not pretended in his accounts to allege the payment.
We come next to inquire into the subject of the legacy of £ 500. It was contended, that the testator did not design a gift of £ 500. but only gave his wife a power of appointment, which, not having been exercised, the legacy falls into the residuum for the benefit of the residuaries. The will, in other words, was said to give power only, not property.
From the earliest time, it has been among the received doctrines of the common law, that an absolute and unqualified power of disposing, conferred by will, and not controlled or explained by any other provision, should be construed as a gift of the absolute property. In this the law but corresponds with the dictates of common reason. Every man of ordinary capacity would understand a power to dis *356 pose of a thing as he pleased, as a gift of the thing itself; and hence, every one who uses the phrase without qualification, is understood by the law as intending a gift. The power of absolute disposition is, indeed, the eminent quality of absolute property. He who has the absolute property, has, inseparably, the absolute power over it; and he to whom is given the absolute power over an estate, acquires thereby the absolute property; unless there is something in the gift which negatives and overthrows this otherwise irresistible implication. Thus, a devise to A. to dispose at his will and pleasure, gives a fee; and devises to dispose of for payment of debts, or to give, sell or do therewith at pleasure, are all held to give an absolute estate, even in lands. 4 Com. Dig. 161. So, a devise to be at the discretion of a person, without .any express disposition to him, otherwise than to declare that the lands are to be at his discretion, gives a fee. So, that a person (tenant in tail under another devise) shall have power to dispose at his will and pleasure: so, too, that the executor shall sell or levy a fine, or make a feoffment, or grant a rent in fee. 2 Preston on estates, 74, 5. So, though a devise to a wife for life, and after her decease, she to give the same to whom she will, passes but an estate for life with a power; yet, if an express estate for life had not been devised to the wife, an estate in fee would have passed by the other words. 8 Yin. Afar. Devise, W. a. pi. 4. p. 234. Where, indeed, such an inconsistent life estate is given, the fee does not pass; for this whole matter rests upon intention. ¡ The estate being the testator’s to give, his will is the law of the subject, unless that will be against the law of the land. Where, therefore, there is an absolute power of disposition, without any other bequest to the party, except what those words themselves imply, they operate to convey property, and not power only. And where an interest is given, generally, and without limitation, that gift is not converted into a mere power, by annexing thereto a general power of disposition. As, a devise ¡to A. with power to dispose at pleasure, is considered as *357 conveying property, not as conferring power ; for the words of power will not be permitted to take away what without them is expressly given. 2 Preston on est. 81,2. 13 Ves. 453. But where there is an express and inconsistent estate for life given, the construction of the instrument is altogether different. For the express estate for life, negatives the intention to give the absolute property, and converts these words into words of mere power, which, standing alone, would have been construed to convey an interest. This appears to me to be very clearly established, by the cases that were cited at the bar; which further lay it down, that where an interest and not a mere power is conferred, the absolute property is vested without any act on the part of the legatee; but where a power only is given, that power must be executed or it will fail. What will amount to an execution of it, has been a matter of discussion; but, upon the principle that a defective execution, however imperfect, will be aided in equity, the recent cases have considered even the assertion of the right of property by suit, as a sufficient execution. Bull v. Vardy, 1 Ves. jr. 270. Shermer v. Shermer's ex’ors, 1 Wash. 266. Goodtitle v. Otway, 2 Wils. 67. Barford v. Street, 16 Ves. 135. Irwin v. Farrer, 19 Ves. 86. Looking at this case upon those principles, I cannot doubt, that this will conveyed, not a mere power, but an interest also. A life interest had, indeed, been given to some estate in specie ; but that interest is altogether severed from the subsequent appropriation of the proceeds of sale, by the power to the executor to sell and distribute. This was very forcibly demonstrated by the counsel for the appellee himself. So that as to the £ 500. it is a devise “to be at the absolute disposal of the wife by will or otherwise as she pleased,” without any other disposition to her by name, than what is implied by those words : there is no life estate in the £ 500. to control their operation : and, therefore, they have the established effect of passing an absolute right. And, if I could have doubted of this construction, after reading this clause, and comparing *358 it with the authorities, I could not hesitate as to the testator’s intention, when explained by other clauses. Thus he provides, that after deducting this and one other sum, Anne. Smith and Anne Craig are to have the residue. The abs0[.ufe deduction of this sum is thus clearly in the mind of the testator. They are only to have what remains after taking this sum out. And in the next clause, he further manifests his understanding of his own will, by providing for the deduction (in case debts require it) in equal proportions, “ according to the sums devised in money to his wife, nephew, niece and sister.” Here he considers the money as devised; and moreover draws no distinction, in terms between this bequest and the others. He considered all as upon the same footing; all as equally legacies. That the others are so, cannot be denied. Therefore, this too must be considered so.
I shall proceed next to consider the question as to the propriety of raising an interest account against the executor, and the yet more important question of the manner of stating that account.
That interest is not to be charged under all circumstances is admitted. It is so decided in the case of Granberry v. Granberry, which has furnished the law of the subject, for the court, and for the country, for nearly half a century. But the general rule is unquestionable, that an executor shall be charged with interest upon the balances in his hands, from the expiration of the year. This case furnishes no circumstances, on which to found an exemption of the executor from the operation of the rule. On the contrary, it is a strong case for its application. Very large sums came to his hands recently after he assumed his office of executor. The principal debts of the estate were british debts. If the question of the propriety of paying them, was doubtful, the money should have been invested till that doubt was settled. If it was not doubtful, if the obligation to pay was clear, the debts should have been paid in order to prevent the accumulation of interest, which has consumed *359 the estate. I am, therefore, clearly of opinion that an interest account should be raised.
But how raised ? I answer upon the principle of Granberry v. Granberry, so often recognized by the court. It is, and (as I have said) has been for thirty-seven years, the established rule for the courts and for the country. Executors, and the inferiour tribunals who have settled their accounts, have governed themselves by it, until a new rule was adopted by the court of chancery of Richmond about the year 1813. I am not disposed to disturb it. Some rule must be established for the government and direction of these fiduciaries. It is a matter which daily comes home to the business of every man in society. Who is there that is not, in some mode or other, concerned with the settlement of executorial transactions? It is important, therefore, to have some fixed and settled rule for this every day business; and it is most important, that that rule should not be lightly changed. That which was laid down hy our predecessors, is founded, I think, in practical good sense, and a knowledge of affairs; and its wisdom has been sanctioned hy their successors, and the general acquiescence of the community.
The account in this case is supposed to be stated upon principles at variance with those laid down in Granberry v. Granberry. It is necessary, therefore, to examine that case, and to extract from it its essential principles, which will probably be found applicable to every supposable case.
The question as to the mode of settling executors’ accounts, arose out of the establishment of a rule for the settlement of the accounts of debtor and creditor, different from (what I will call) the ordinary mercantile rule. The effect of the mercantile rule was, to give interest upon the payments as well as upon the debt. The operation of this •system is, in many cases, so obviously injurious to the creditor, that it was justly rejected, and a new rule was established by chancellor Wythe, in the case of Ross v. Pleaants &c. which may be called the court rule. It is that, *360 which now universally prevails in calculating the balance due Up0n a bond, where partial payments have been made, and it is that to which the court had reference in Granberry v. Granberry. In that case, upon exceptions to a commissioner’s report, it was decided, “ that in the settlement of executors’ accounts, the accounts ought tobe closed, at the end of each year; and interest allowed upon the different balances, up to the time when the transaction closed. Such interest ought not to be carried to the account of the succeeding years, in order to deduct the same from the payments made in succeeding years. This, though done in the common cases of debtors, is too strict as to trustees.” From this decision, I deduce these rules or principles:
1. The various items of receipts on the one hand, and disbursements on the other, in each current year, are not to be treated as distinct items of account, but are to be added together and considered as constituting a single item.
2. Interest upon these balances, is not to be carried to the succeeding year, so as to be set-ofF against the disbursements in such succeeding year; for
3. The important principle of the rule, is, that the payments or disbursements shall always be first applied to discharge the principal, so long as any principal remains unpaid, and shall never go to discharge interest until the principal has been altogether paid off. Hence results the direction,
4. That, instead of calculating interest upon the balances of the year, and carrying it to the succeeding year (which is expressly forbidden) interest upon the respective balances are to be calculated up to the close of the transaction, and then, and not till then, brought into the general account with the principal.
A case however may occur, and frequently does occur, where a partial, or perhaps only an apparent, variance from the rule of Granberry v. Granberry, may seem essential. It will be found, however, not to be a departure in principle, but in form merely. And, as it is of much importance, that the rule, with its real or apparent exceptions, should be pro *361 perly understood, I shall exemplify the supposed ease by a statement.
Suppose that, on the 1st January 1801, the balance against an executor, is £ 100. principal, and £ 100. interest. In 1802, he pays £ 100. which is set off against the principal sum of £100. leaving no balance of principal. In 1803, he pays another sum of £ 100. and in that year, there are no receipts. The question here is, shall the £100. thus paid carry interest, because there are no receipts of the year against which to set it off, or shall it be applied to the discharge of the £ 100. which remains due for interest? Unquestionably the latter; for, as there is no principal to the reduction of which it can be applied, the rule in Granberry v. Granberry is not invaded, by applying it in payment of the interest; and it would be grossly unjust, that the executor’s £ 100. should be an interest bearing sum for a long course of years, while the testator’s £ 100. would be a dead capital. The effect would be, that in sixteen years the testator’s £ 100. would be paid off by interest on the executor’s £ 100. which would then remain an unimpaired demand against the estate.
But suppose another transaction : that on the 1st January 1801, the balance against the executor is £ 1000. principal, and £ 500. interest. In 1802, he pays £ 100. which is set off against the principal, leaving due at the end of the year, £900. of principal, and the £500. of interest. In 1803, he pays £ 500. and receives nothing. Shall this £ 500. be applied to the payment of the £ 500. interest, or to reduce the £900. principals Unquestionably, the latter. The spirit and essence of the rule is, that while there is any principal to reduce, the disbursements shall go to reduce it. And in this case, though there are no receipts in that year, against which to set off the disbursements, there is a large arrear of the principal of former years, to which it should bo applied. Shall it be said, that, by the case of Granberry v. Granberry, the balances of one year shall not be carried to the transactions of the next ? This indeed is true; *362 and the account in Granberry v. Granberry, as we shall see, was so settled, accordingly. But if we vary the form of the account by carrying forward balances at all, we must pursue the overruling and all pervading principle, that while there is any principal remaining, the disbursements shall be applied to reduce that principal and not to reduce the interest. To carry on the balances of interest and thus to apply the disbursements to interest, where there is a large unpaid balance of principal of former years, is to violate the rule, both in its letter and in its spirit. For it is not only forbidden in terms, to carry the interest into the account of succeeding years, but it was also the design of the framers of the rule, that while a principal sum remains to be discharged, the disbursements shall not go to liquidate the interest.
After this exposition, it is hardly necessary to add, that the account, in this case, is in my conception utterly erroneous. It violates the rule in Granberry v. Granberry most decidedly, in carrying the interest of the account into succeeding years, whenever the receipts of those years were less than the disbursements; and applies the disbursements to the discharge of that interest, merely because there happened to be no receipts in those years, though there was an arrear of principal of many thousand dollars of former years. If the commissioner was entitled to carry the interest of a former year into the account of a succeeding year, why could he not also carry the arrear of principal into that year ? Had he done so, there would have been ample sums of principal, at all times, to absorb the disbursements.
In coming to the resolution to conform, as far as possible, to the rule laid down in Granberry v. Granberry, the court has very naturally turned its attention to that case, to see how it was practically applied, and have found the accounts finally closed, in strict conformity with the language of the court, in the passages I have extracted from its opinion.*
*363 It is material to remark that after the former account, which had been disapproved, was thus remodelled, the chancellor confirmed the report, and his decision was-affirmed 1 . by the court of appeals, thus giving a double sanction to its principles and the best evidence that they had been rightly understood.
However, where the mode of stating the executor’s account, which was correctly pursued in the case of Granberry v. Granberry, is strictly pursued, it operates unjustly, where the balances shift; as, where the disbursements of a year are more than sufficient to discharge the whole principal, there the excess should be applied to pay interest. We therefore feel at liberty, thus far to explain the rule of Granberry v. Granberry: that where, in any year, there are disbursements but no receipts, or where the disbursements exceed the receipts of such year, such disbursement, or excess of disbursement, shall be applied to the payment of the balance of principal of the next preceding year or years, in which there may have been a balance. But if there be no principal remaining due to the estate, then, and not till then, the disbursements shall be applied to the payment of any interest which may be due. And if there he neither principal nor interest remaining due, interest shall then be allowed upon such disbursement, unless it be absorbed by subsequent receipts. And where the balance of principal of any preceding year, shall be thus extinguished, the interest on such balance shall then cease.
Many of the commissioners of the courts of chancery, do not follow strictly the formula of Granberry v. Granberry. It is possible, that the formula pursued by the commissioner in the present case, amounts to the same thing with the formula in Granberry v. Granberry, as modified above. But as, perhaps, it will be better to adhere to a particular formula, that the mode of statement may become familiar to parties, to counsel, and to the court, who are often perplexed by complicated modes of statement, far more than they would be by executing the task of commissioner *364 themselves, I have prepared a vqry simple one.* I think , , , , , this court should never undertake to recast accounts which come before it; and though I am strongly inclined to think that the plaintiffs’ intestate has received, in this case, more ^ian ^ie avails of the estate justified, and that his bill will eventually be dismissed, yet I cannot enter into that investigation. An error, not in principle, but in mere calculation} or in statement, if committed by us, cannot be corrected. If committed by a commissioner, it is open to correction. Moreover, neither the time nor the capacity of this court, will enable it to recast the various accounts which come before it. That is the business of thorough bred accountants. It is for us only to settle the principles upon which such settlements shall be made.
It is proper to observe, that in adopting as a general rule, the rule of Granberry v. Granberry, as I have modified it, I do not mean to declare it inflexible. There may be strong cases, in which it would work gross injustice, and in which, as our predecessors admit, it must bend. Such would be the case, if a very large sum was received in the last month of one year, and paid away again in the first month of the succeeding year, or vice versa. In such a case it would be unreasonable to burden the executor, on the one hand, or the estate on the other, with a full year’s interest on such sum; and in such case, therefore, I should deem it proper, that interest should only be charged until the reimbursement.
The other judges concurred in the opinion of the president, on all the points; and a decree was entered accordingly, reversing the chancellor’s decree, declaring the principles on which the interest account of the executor should be stated, correcting the accounts also as to various matters of detail, and remanding the cause &c.

See statement A. at the end of the volume, which shews how the account in Granberry v. Granberry, was in fact settled, in pursuance of the opinion of this court in 1 Wash. 249.

 See statement B. at the end of the volume, which exemplifies the rule of Granberry v. Granberry, as expounded and modified by the court in the present case.